UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 3:15-cv-14-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| COMMONWEALTH OF KENTUCKY ex | ) | **&** |
| rel. JOHN TILLEY, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

John Doe is a registered sex offender. As such, he is bound by the numerous requirements set forth in Kentucky's Sex Offender Registration Act, which seeks to govern where Doe lives, works, recreates, and more. Certain Kentucky restrictions particularly impact Doe's use of the internet. For example, the law prohibits Doe from using any social networking websites that may be accessed or used by minors. KRS § 17.546(2). Doe must provide his local probation office with all of his email and other internet name identities. And he must register any new internet name identities with his local probation office "on or before the date of the change or use or creation of the new identity." KRS § 17.510(10)(c).

Doe, joining a host of plaintiffs nationwide challenging similar state statutes, has asked the Court to invalidate the Kentucky Sex Offender Registration Act's social media provisions because they abridge his First Amendment right to free speech.[1] After considering the United

---

[1] In Plaintiff's Motion for Permanent Injunction, Plaintiff also addresses the constitutionality of KRS § 17.580, a statute directing the Kentucky State Police to maintain and update a web site with information concerning adults convicted of sex crimes or crimes against minors. [R. 27-1 at 21.] However, the Court does not rule here on the constitutionality of this provision, given that the Plaintiff's prayer for relief, both in the complaint [R. 1] and in the Motion for Permanent Injunction [R. 27 at 1] fail to address the

States Supreme Court's recent ruling in *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730 (2017), as well as the vague language of the Commonwealth's statutory scheme, the Court GRANTS Doe's motion for a permanent injunction.

# I

John Doe, a resident of Fayette County, was convicted in 2007 of possessing child pornography. As a result of his conviction, he is now subject to the myriad provisions of Kentucky's Sex Offender Registration Act, KRS § 17.510, *et seq*. A number of provisions impact Doe and other offenders' social media use, regardless of the conduct underlying their mandated registration as sex offenders. First, KRS § 17.546 governs registrants' use of social media as follows:

> No registrant shall knowingly or intentionally use a social networking Web site or an instant messaging or chat room program if that Web site or program allows a person who is less than eighteen (18) years of age to access or use the Web site or program.

*See* KRS § 17.546(2). That statute also includes a set of definitions:

> (a) "Instant messaging or chat room program" means a software program that allows two (2) or more persons to communicate over the Internet in real time using typed text; and
>
> (b) "Social networking Web site" means an Internet Web site that:
>    1. Facilitates the social introduction between two (2) or more persons;
>    2. Allows a person to create a Web page or a personal profile; and
>    3. Provides a person who visits the Web site the opportunity to communicate with another person.

KRS § 17.546(1). Any sex offender who violates KRS § 17.546(2) faces Class A misdemeanor charges. *See* KRS § 17.546(4).

Additionally, KRS § 17.510 requires Doe and other registered sex offenders to provide

---

enforcement of KRS § 17.580. This matter is before the court on a motion to grant injunction regarding only the enforcement of KRS §§ 17.546(2) and 17.510(10)(c) and (13), and the Plaintiff admits the issues regarding KRS § 17.580 have not been adequately briefed by the parties [R. 55–57].

all of their e-mail addresses, instant messaging names, or "other Internet communication name identities" to their local probation and parole offices. KRS § 17.510(10)(c). The Justice and Public Safety Cabinet is permitted to intermittently verify these name identities, and if the Cabinet discovers that a sex offender registrant failed to provide a particular identity, the Cabinet may notify the relevant County or Commonwealth's Attorney Office. *See* KRS § 17.510(13). A sex offender who violates KRS § 17.510(10)(c) is considered guilty of a Class D felony for his or her first violation, or guilty of a Class C felony for any subsequent violations. *See* KRS §§ 17.510(11)-(12).

John Doe argues each of these statutes impermissibly abridges his right to free speech under the First Amendment.[2] Doe initially challenged the statutes described above by way of a motion for preliminary injunction filed against the Secretary of the Justice and Public Safety Cabinet, the Fayette County Attorney, and the Fayette County Commonwealth's Attorney, all sued in their official capacities.[3] But the parties later consolidated their briefing, and they now ask the Court to consider Doe's request as one for permanent injunctive relief. [*See* R. 24.] The Court heard oral argument on the matter, subsequently stayed the case pending a potentially relevant Sixth Circuit Court of Appeals ruling in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), and then further reserved ruling while the United States Supreme Court resolved *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730 (2017). The Court, now aided by binding Supreme Court precedent, grants Doe's request for injunctive relief.

---

[2] Doe's complaint raises an *ex post facto* claim for relief, but Doe subsequently chose to abandon that claim. [*See* R. 27-1 at 1 n. 2.]

[3] At the time of filing, these individuals were J. Michael Brown, Ray Larson, and Larry Roberts, respectively. [*See* R. 1.] Today, the Secretary of the Justice and Public Safety Cabinet is John Tilley, and the Fayette County Commonwealth's Attorney is Lou Anna Red Corn. Pursuant to Federal Rule of Civil Procedure 25, the current officeholders are automatically substituted for their predecessors as official capacity Defendants in this action. *See* Fed. R. Civ. P. 25(d).

## II

### A

The Court's analysis of KRS § 17.546(2) is informed almost entirely by *Packingham v. North Carolina*. *See* 137 S. Ct. 1730. In that case, the Supreme Court considered a North Carolina statute not terribly distinct from KRS § 17.546. Prior to the high court's *Packingham* opinion, North Carolina law prohibited all registered sex offenders from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." *See* N.C. Gen. Stat. Ann. §§ 14-202.5; *Packingham*, 137 S. Ct. at 1733. Upon review, the Supreme Court invalidated this statute and its accompanying definitions as an "unprecedented" burden on sex offender registrants' First Amendment speech. *Packingham*, 137 S. Ct. at 1737.

Writing for the majority, Justice Anthony Kennedy explained that internet use is clearly encompassed by the First Amendment. "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the vast democratic forums of the Internet in general, and social media in particular." *Id.* at 1735 (internal quotation marks and citation omitted). Although the Supreme Court did not analyze in detail the level of scrutiny to apply upon review,[4] the Supreme Court assumed for the sake of argument that the statute was content neutral

---

[4] A court's threshold task in a case such as the present one is to determine whether the relevant law is subject to intermediate or strict scrutiny. In general, restrictions that are considered content-neutral are subject to intermediate scrutiny and will be upheld if they are narrowly tailored to serve a significant government interest, and if they leave open ample alternative channels of communication. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 262 F.3d 543, 551 (6th Cir. 2001). However, content-neutral restrictions that foreclose an entire medium of communication may be subject to strict scrutiny, in which case the restriction will only be upheld if the government can prove the law is narrowly tailored to promote a compelling government interest and that the government's purpose cannot be achieved through less restrictive means. *See, e.g.*,

and subject only to intermediate scrutiny. Even applying this lower standard of review, the Supreme Court found the law to be unconstitutionally burdensome and overbroad. *Id.* at 1736-38.

Defendant John Tilley, Secretary of the Justice and Public Safety Cabinet, concedes that Kentucky's restriction on sex offender registrants' use of social media websites is unconstitutional in the wake of *Packingham*. [*See* R. 52 at 2.] Secretary Tilley explains that, while he considers Kentucky's sex offender restrictions to be important tools to protect the children of the Commonwealth from abuse, the North Carolina statute struck down by the Supreme Court was even more narrowly tailored than KRS § 17.546(2). [*Id.*]

Defendants Lou Anna Red Corn and Larry Roberts, Fayette County's Commonwealth and County Attorneys, do not share Secretary Tilley's view and attempt to distinguish KRS § 17.546(2) from the unconstitutional North Carolina law. The Defendants point out that the North Carolina statute penalized a sex offender registrant's mere "access" of a social media site, but the Kentucky law only penalizes "use." [*See* R. 54 at 5.] Because the Kentucky statute includes both the words "access" and "use", the General Assembly must have intended the two terms to have a distinct meaning. And this is significant, they argue, because a Kentucky sex offender registrant can still "obtain information freely on the internet," something a North Carolina sex offender could not do. [*See id.*]

Despite these attempts to distinguish KRS § 17.546(2) from the law struck down in *Packingham*, the Court agrees with the Plaintiff and Secretary Tilley that the Commonwealth's statute is unconstitutional. Ms. Red Corn and Mr. Roberts apparently find it sufficient that Mr. Doe could log onto a website such as Facebook or Twitter and read the speech of others, thereby

---

*Planet Aid v. City of St. Johns, Mich.*, 782 F.3d 318, 330 (6th Cir. 2015) (citing *Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 813 (2000)).

obtaining political news, learning of community events, or viewing job postings. [*See* R. 54 at 5 (emphasizing that the Kentucky law still "permits sex offenders to obtain information freely on the internet"). But this, under *Packingham*, is not enough. "A fundamental principle of the First Amendment is that all persons have access to places where they can *speak* and listen, and then, after reflection, *speak* and listen once more." *Packingham*, 137 S. Ct. at 1735 (emphasis added). KRS § 17.546 as it currently stands may allow Mr. Doe to "listen" to the speech of others on social media sites, but it surely does not allow him to "speak."

Instead, as Secretary Tilley seems to recognize, KRS § 17.546(2) burdens substantially more speech than necessary to further the Commonwealth's legitimate interests in protecting children from sexual abuse solicited via the internet. Like *Packingham* points out, "it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." *See* 137 S. Ct. at 1737. But KRS § 17.546(2) prohibits sex offender registrants from engaging in any speech whatsoever on a social media website, as innocent as that speech may be.

Indeed, rather than prohibiting a certain type of conduct that is narrowly tailored to prevent child abuse, the statute prevents Mr. Doe and others similarly situated from "access[ing] what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Id.* at 1732; *Ward*, 491 U.S. at 791. *See also Doe v. Prosecutor, Marion Cnty., Ind.*, 705 F.3d 694, 699 (7th Cir. 2013) (acknowledging that "illicit communication comprises a miniscule subset of the universe of social network activity" and striking down an Indiana statute effectively banning registered sex offenders from all social

6

media use). This, as *Packingham* made clear, is impermissible.

Further, despite the Commonwealth's repeated attempts through written and oral arguments to allege that KRS § 17.546 applies only to websites that minors are truly likely to frequent and use for communication [*see, e.g.*, R. 31 at 8; R. 41 at 9-11], the statute as written fails to make that clear. Pre-*Packingham*, the Defendants asked the Court to construe both KRS § 17.546(2) and KRS § 17.510 (discussed below) to include only "gaming and social networking sites" that "involve considerable interaction with others, many of whom are minors," and to avoid reading the restrictions to include a ban against online banking or shopping websites. [*See* R. 31 at 8.] And the Court previously expressed concerns that Kentucky's statutory scheme prohibits Mr. Doe from participating in basic online activities such as creating an account on Orvis.com to purchase equipment for fly-fishing. [R. 41 at 9-11.]

*Packingham* noted a similar vagueness problem with the North Carolina statute, explaining that the law "might well bar access not only to commonplace social media websites but also to websites as varied as Amazon.com, Washingtonpost.com, and Webmd.com." *Packingham*, 137 S. Ct. at 1736; *see also* 137 S. Ct. at 1741-43 (Alito, J., concurring). And this vagueness problem contributed to the Supreme Court's holding. *Id.* The same holds true for KRS § 17.546: the law is flawed not only because it prohibits Doe from engaging in legitimate speech even on social networking platforms, but also because it fails to properly communicate what conduct, exactly, is criminal. *Id.* While the General Assembly may not have intended to prohibit Doe from dialoguing with other adults about, for example, *Lexington-Herald Leader* articles on Kentucky.com, that conduct—and so much more—is swept up in KRS § 17.546's tide. The statute, accordingly, is unconstitutional.

**B**

Next, while Plaintiff Doe's challenge to KRS §§ 17.510(10) and 7.510(13) falls outside the direct scope of *Packingham*, the Supreme Court's guidance in that case still guides the Court's analysis. KRS § 17.510(10)(c) requires a sex offender registrant to report all of his or her "Internet communication name identities" to the probation office, and to inform the probation office upon any change or creation of a new "Internet communication name identit[y]." This term is not defined, although the statutory provision on the whole reads:

> If the electronic mail address or any instant messaging, chat, or other Internet communication name identities of any registrant changes, or if the registrant creates or uses any new Internet communication name identities, the registrant shall register the change or new identity, on or before the date of the change or use or creation of the new identity, which the appropriate local probation and parole office in the county in which he or she resides.

KRS § 17.510(10)(c). Presumably, these identities are collected by law enforcement to enable the public's use of the search function provided for in KRS § 17.580(3) and discussed in greater detail below.

Doe argues that this reporting requirement is impermissibly vague, that it serves as an unconstitutional prior restraint on lawful speech, and that it impermissibly chills his and other sex offender registrants' lawful speech. [*See* R. 27-1 at 15, 23-26.] At oral argument, the Defendants acknowledged that the trend of the case law is against them when it comes to Doe's latter two arguments, particularly in light of the fact that the Commonwealth's reporting requirement is an immediate one. [*See* R. 41 at 33-34]; *see also Doe v. Harris*, 772 F.3d 563, 581-82 (9th Cir. 2014) (striking down a twenty-four hour reporting requirement because the law chilled First Amendment activity); *White v. Baker*, 696 F. Supp. 2d 1289, 1306-12 (N.D. Ga. 2010) (finding a similar requirement unconstitutionally chilled speech). Ultimately, though, the Court need not fully address those arguments, because Doe's first contention regarding vagueness succeeds.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Indeed, every law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* As explained above, one reason the North Carolina statute at issue in *Packingham* was deemed unconstitutional was its inherent vagueness. Thus, while the Defendants are quick to point out that the statute addressed in *Packingham* did not involve a reporting requirement, the constitutional principles explained in *Packingham* apply to KRS § 17.510(10)(c) just as they do KRS § 17.546.

The *Packingham* court could not determine whether the North Carolina statute in question truly applied to only "commonly understood" social media sites like Facebook, LinkedIn, and Twitter, or whether it also extended to news and online shopping forums. *See Packingham*, 137 S. Ct. at 1737. Likewise, the Court cannot determine, and, therefore, Mr. Doe cannot be expected to know, what types of "Internet communication name identities" he must register with his probation office pursuant to KRS § 17.510(10)(c).

To its detriment, KRS § 17.510(10) does not define the "Internet communication name identities" it requires sex offenders to register. In an effort to downplay this, the Defendants argue the Court should read "Internet communication name identities" to include only those internet identifiers "that are primarily used for online communication with members of the public (as are e-mails and instant messaging)." [R. 31 at 8.] *See also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) ("It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld."). But just like in *Packingham*, the statute is not susceptible to such a narrowing construction. It may be true that the General

9

Assembly meant the law to apply only to a sex offender's new Facebook profile, but the law as written might as well apply to usernames created to engage in online dialogue over Amazon.com products of Washingtonpost.com news stories. *Packingham,* 137 S. Ct. at 1737.

Additionally, the statute fails to explain how, exactly, a sex offender must register a change in his or her identities. At oral argument, the Commonwealth conceded the reporting requirement was an immediate one but was otherwise unable to explain to the Court whether registration of a new identity must be accomplished online, through a phone call, via some sort of written communication, or in person. [R. 41 at 31.] This vagueness is troubling because "the ambiguities in the statute may lead registered sex offenders either to overreport their activity or underuse the Internet to avoid the difficult questions in understanding what, precisely, they must report." *Harris*, 772 F.3d at 579. As a result, just as KRS § 17.546(2) violates Doe's constitutional rights, KRS §§ 17.510(10) and (13) do, too.

### C

Finally, the Court finds that the constitutional violations brought about by KRS § 17.546 and KRS §§ 17.510(10)(c) and (13) are worthy of permanent injunctive relief. To obtain a permanent injunction, a plaintiff "must first establish that [he has] suffered a constitutional violation." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006). As explained above, Plaintiff Doe has clearly suffered violations of his First Amendment rights as a result of the challenged laws. Further, the four factors for courts to consider before granting a request for a permanent injunction also weigh in Doe's favor. These factors require the Court to find (1) that that the Plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that an equitable remedy is warranted upon considering the balance of hardships between the parties;

and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Wedgewood Ltd. Partnership I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010).

As for element one, Doe's irreparable harm flows naturally from the constitutional violations caused by the laws.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (explaining that "a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights").  Next, Doe cannot be adequately compensated through monetary damages.  *See, e.g., Brinkman v. Budish,* 692 F. Supp. 2d 855, 866 (S.D. Ohio 2010) (noting "there are no available remedies at law that are adequate to compensate for a loss of First Amendment rights").

Third, the balance of the hardships between the parties definitively tips in Doe's favor. While the Commonwealth would presumably be harmed if the enforcement of a *constitutional* law were enjoined, the statutes discussed in this case have already been deemed unconstitutional. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  And finally, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *G & V Lounge, Inc. v. Mich. Liquor Control, Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

Doe's constitutional challenge in this case is a facial one.  According to the Sixth Circuit, "a facial challenge to a law's constitutionality is an effort to invalidate the law in each of its applications, to take the law off the books completely."  *Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013) (internal quotation marks and citation omitted).  To succeed in a First Amendment facial challenge, a plaintiff must demonstrate that a substantial number of instances exist in which the statute cannot be applied constitutionally.  *Id.* at 872-72 (describing facial challenges generally as well as facial challenges specific to First Amendment claims).  Plaintiff

Doe has done so. Accordingly, the Commonwealth will be permanently enjoined from enforcing the unconstitutional statutes not only against Mr. Doe, but altogether.

### III

Therefore, for the above reasons the Court hereby **ORDERS** that Plaintiff John Doe's motion for a permanent injunction [**R. 27**] is **GRANTED.** The Commonwealth is permanently enjoined from enforcing KRS §§ 17.546 and 17.510(10), (13) in light of the unconstitutional restrictions those statutes place on the First Amendment rights of sex offenders. Doe's request for preliminary injunctive relief is **DENIED AS MOOT**. [**R. 15.**]

This the 20th day of October, 2017.

Gregory F. Van Tatenhove
United States District Judge