UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

NO. 3:15-cv-00014-GFVT-EBA

JOHN DOE,                                                                          PLAINTIFF,

v.                                          **MAGISTRATE JUDGE'S**
                                   **REPORT AND RECOMMENDATION**

COMMONWEALTH OF KENTUCKY, ex rel.,
JOHN TILLEY, et al.,                                                      DEFENDANTS.

This matter comes before the Court on Plaintiff's Motion for Attorney's Fees and Costs.

[R. 81]. Having considered the matter fully, and being otherwise sufficiently advised, the Court

recommends Plaintiff be found to be entitled to attorney's fees in the amount of $40,440.00 and

costs in the amount of $400.00.

**DISCUSSION**

**A. WHETHER PLAINTIFF IS A PREVAILING PARTY**

In an action brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, such as the case

presently before the Court, "the court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee as part of the costs . . . ." 42 U.S.C § 1988(b). To be entitled to an award

of attorney's fees under 42 U.S.C. § 1988, the party must have prevailed in the action. *Buckhannon*

*Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598,

602 (2001) (citing 42 U.S.C. § 1988); *see also Binta B. ex rel. S.A. v. Gordon,* 710 F.3d 608, 620

(6th Cir. 2013) (citing 42 U.S.C. § 1988). "'Prevailing party' is a legal term of art designating 'one

who has been awarded some relief by the court . . . .'" *Gordon,* 710 F.3d at 620 (quoting

*Buckhannon Bd. & Care Home, Inc.,* 532 U.S. at 603). However, "the Supreme Court has stated

that in providing for fees under § 1988, 'Congress intended to permit the . . . award of counsel fees

only when a party has prevailed on the merits.'" *Gordon,* 710 F.3d at 620 (quoting *Hanrahan v.*

*Hampton,* 446 U.S. 754, 758 (1980)). "Prevailing on the merits" includes:

> "'succeed[ing] on any significant issue . . . which achieves some of the benefit the parties sought in bringing suit," *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "the settling of some dispute which affects the behavior of the defendant towards the plaintiff," *Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and resolution of the dispute in a way that materially alters the legal relationship of the parties. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

*Gordon,* 710 F.3d at 620. "'A plaintiff crosses the threshold to 'prevailing party' status by

succeeding on a single claim, even if he loses on several others and even if that limited success

does not grant him the 'primary relief' he sought.'" *Gordon,* 710 F.3d at 620 (quoting *McQueary*

*v. Conway,* 614 F.3d 591, 603 (6th Cir. 2010)).

On February 9, 2015, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, Plaintiff filed

the present action seeking "a preliminary injunction, permanent injunction, and declaratory relief

prohibiting . . . Defendants from enforcing [KRS §§ 17.546 and 17.510(10), (13)] and declaratory

relief that the Plaintiff's rights under the First and Fourteenth Amendments to the United States

Constitution [were] violated by these state statutes." [R. 1, at 1]. In sum, KRS §§ 17.546 and

17.510(10), (13) placed certain restrictions and obligations on registered sex offenders regarding

their use of social networking websites and the internet. [R. 1; R. 57].

On October 20, 2017, the Court granted Plaintiff's Motion for a Permanent Injunction [R.

27] and denied as moot Plaintiff's request for a preliminary injunction. [R. 57]. Also, the Court

granted Plaintiff's request for declaratory relief by holding KRS §§ 17.546 and 17.510(10), (13)

unconstitutional. *Id.* In addition to Plaintiff prevailing on the merits, Defendant, Commonwealth

of Kentucky, Ex. rel., John Tilley, Secretary, Justice and Public Safety Cabinet, in his official

capacity ("Defendant Tilley"), agrees Plaintiff is the prevailing party. [R. 84, at 1]. Furthermore,

Defendants, Lou Anna Red Corn, in her official capacity as Commonwealth's Attorney for Fayette County, Kentucky, and Larry Roberts, in his official capacity as County Attorney for Fayette County, Kentucky, do not contest Plaintiff's argument that Plaintiff is the prevailing party in this case. [R. 86]. Therefore, the undersigned recommends Plaintiff be found to be the prevailing party in this case and entitled to reasonable attorney's fees.

## B. WHETHER SPECIAL CIRCUMSTANCES EXIST THAT WOULD DEFEAT A FEE AWARD

While 42 U.S.C. § 1988(b) "uses permissive language regarding fee awards, 'the Supreme Court has read [§ 1988] as mandatory where the plaintiff prevails and special circumstances are absent.'" *Hescott v. City of Saginaw,* 757 F.3d 518, 523 (6th Cir. 2014) (quoting *Déjà Vu v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 421 F.3d 417, 420 (6th Cir. 2005)).

The Sixth Circuit Court of Appeals has found that a "case-by-case approach" should be utilized when determining whether a special circumstance exists that would defeat a fee award. *Hescott,* 757 F.3d at 523 (citing *Déjà Vu,* 421 F.3d at 421-22). "In this case-by-case inquiry, a non-prevailing defendant bears the burden 'to make a strong showing that special circumstances warrant a denial of fees.'" *Hescott,* 757 F.3d at 523 (quoting *Déjà Vu,* 421 F.3d at 421-22). Additionally, "'courts have made clear that special circumstances should not be easily found.'" *Hescott,* 757 F.3d at 523 (citing *Cleveland v. Ibrahim,* 121 F. App'x. 88, 90 (6th Cir. 2005) (collecting cases)). Furthermore, the Sixth Circuit Court of Appeals has "'never (to [its] knowledge) found a 'special circumstance' justifying the denial of fees.'" *Hescott,* 757 F.3d at 525 (quoting *McQueary v. Conway,* 614 F.3d 591, 604 (6th Cir. 2010)). "Moreover, '[i]t is 'extremely rare' to deny fees based on special circumstances in other circuits as well.'" *Hescott,* 757 F.3d at 525 (quoting *McQueary,* 614 F.3d at 604).

In the present case, Plaintiff argues, "No such 'special circumstances' exist here that would inveigh against an award." [R. 81, at 3]. However, Defendant Tilley contends, "[T]here exists such 'special circumstances' that would lead the court to use its discretion in an attorney fees award." [R. 84, at 2]. While Defendant Tilley does not seek a total denial of fees, Defendant Tilley and Defendants Corn and Roberts each argue Plaintiff's attorney's fees should be reduced. [R. 84; R. 86]. Specifically, Defendant Tilley argues KRS §§ 17.546 and 17.510(10), (13) were valid laws for years and only became problematic due to the proliferation of today's social media and internet usage. [R. 84, at 2]. Likewise, Defendants Corn and Roberts request the Court consider "the very recent changes in the landscape of anonymous communication and the breadth to which it affects minors when evaluating the costs and fees requested by Plaintiff and reduce the award accordingly." [R. 86, at 2]. Additionally, Defendant Tilley argues, in summation, that the outcome of this case had less to do with Plaintiff's counsel's work on the case and more to do with the United States Supreme Court deciding a North Carolina statute that was similar to KRS §§ 17.546 and 17.510(10), (13) in the present case was unconstitutional. [R. 84, at 2-3 (citing *Packingham v. North Carolina,* 137 S.Ct. 1730 (2017))]. Moreover, Defendant Tilley argues, "[M]uch of the supplemental briefs filed by the Plaintiff were neither necessary, nor relevant to the outcome at hand. Brief writing alone, with one oral argument before the court, was the extent of the activity in the case." [R. 84, at 2-3]. None of Defendants' arguments amount to a special circumstance that would render an attorney's fee award unjust. However, Defendants' arguments will be considered further below, as they relate to the calculation of Plaintiff's attorney's fees and the Court's consideration of a possible adjustment of those fees.

## C. CALCULATION OF PLAINTIFF'S ATTORNEY'S FEES

"'The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Miller v. Davis,* 267 F. Supp. 3d 961, 994 (E.D. Ky. July 21, 2017) (citing *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While this two-step calculation, known as the lodestar amount, provides an "initial estimate of the value of the lawyer's services," it does not end the inquiry. *Id.* at 433-34. "After determining the lodestar amount, the court can adjust the fee upward or downward 'to reflect relevant considerations peculiar to the subject litigation.'" *Davis,* 267 F. Supp. 3d at 994 (quoting *Adcock–Ladd*, 227 F.3d at 349).

"The party seeking attorneys' fees bears the burden of documenting his entitlement to the award." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). "The fee applicant 'should submit evidence supporting the hours worked and rates claimed.'" *Id.* (quoting *Hensley*, 461 U.S. at 433). In the present case, Plaintiff's counsel has provided time entries showing the dates he worked on the case, descriptions of the work he did on those dates, and the amount of hours he worked on those dates. [R. 81-1, at 9-20]. Defendants have not challenged the reasonableness of the hours Plaintiff's counsel worked. Instead, Defendants have challenged the reasonableness of Plaintiff's counsel's proposed hourly rate. While Defendants do not contest the hours Plaintiff's counsel worked, "the Court is required to 'provide a concise but clear explanation of its reasons for' awarding a certain amount of fees." *Davis,* 267 F. Supp. 3d at 995 (quoting *Hensley*, 461 U.S. at

5

437). Therefore, the Court will address the reasonableness of both the hourly rates and the hours expended.

## 1. REASONABLE HOURLY RATE

"A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock–Ladd*, 227 F.3d at 350. "To determine a reasonable hourly rate, courts use as a guideline the prevailing market rate, which is defined as 'the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). "Therefore, 'the appropriate rate is . . . the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation.'" *Davis,* 267 F. Supp. 3d at 995 (quoting *Husted*, 831 F.3d at 715-16). "A district court may look to 'a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'" *Id.* (quoting *Van Horn v. Nationwide Prop. & Cas. Ins.*, 436 F. App'x. 496, 499 (6th Cir. 2011)). "Furthermore, while the district court may take into consideration an attorney's skill level in identifying the market rate, [the Sixth] Circuit holds that 'reasonable' fees need not be 'liberal' fees . . . ." *Husted*, 831 F.3d at 716 (quoting *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), *abrogated on other grounds by Husted*, 831 F.3d at 725).

In the present case, Plaintiff's counsel has represented Plaintiff since the onset of this action. [R. 1; R. 81-1]. Plaintiff's counsel seeks an hourly rate of $300.00. [R. 81, at 4; R. 81-1, at 6]. In support of the hourly rate of $300.00, Plaintiff's counsel directs the Courts attention to *Davis,* a recent Eastern District of Kentucky decision regarding hourly rates in a 42 U.S.C. § 1983 action.

[R. 81, at 4 (citing *Davis,* 267 F. Supp. 3d at 995)]. In *Davis,* the Court approved hourly rates for local counsel as follows: "$350.00 for William Sharp, $300.00 for Daniel Canon, $300.00 for Lara Landenwich, and $250.00 for L. Joe Dunham." *Davis,* 267 F. Supp. 3d at 995.

While the hourly rates in *Davis* range from $250.00 to $350.00, in the present case, Plaintiff's counsel argues, "An examination of [the] affidavits [by counsel in *Davis*] evidence that their experience, respectfully, is no greater than that of Plaintiff's counsel here." [R. 81, at 4]; *see also Davis,* 267 F. Supp. 3d at 995. Specifically, Plaintiff's counsel references the $350.00 and $300.00 approved hourly rates of Mr. Sharp and Mr. Canon, respectively. [R. 81, at 4]. When Plaintiff's education and legal career are compared to those of Mr. Sharp and Mr. Canon, Plaintiff's counsel's experience is, indeed, equivalent to that of Mr. Sharp and Mr. Canon. Mr. Sharp and Mr. Canon's Affidavits, R. 183-5; R. 183-6, *Davis*, 0:15-cv-00044-DLB. In fact, respectfully, the length of Plaintiff's counsel's legal career is more in line with that of Mr. Sharp than Mr. Canon, yet Plaintiff's counsel does not seek Mr. Sharp's approved hourly rate of $350.00, which is Plaintiff's counsel asserts is his normal hourly rate for civil litigation. *Id.*; [R. 81-1, at 5].

Even though Plaintiff's counsel is seeking less than his normal hourly rate of $350.00 and Defendant Tilley states, "Plaintiff's Counsel is of great experience and caliber. He is perhaps one of the most regarded attorneys practicing in the KY BAR," Defendant Tilley argues, "In the case at hand, based solely upon the outcome hanging on the controlling *Packingham* decision, Defendant Tilley would assert that a rate of $200 per hour would more closely represent the work required to reach a final resolve." [R. 84, at 3]. Moreover, Defendant Tilley contends that while "hourly rates of $300 and up are not uncommon in this District . . . rates from $150-$250 are common as well . . . ." *Id.*

As Plaintiff suggests, "[H]ad the Supreme Court [in *Packingham*] affirmed employing the State court's analysis, then it is highly likely the Plaintiff would have lost here." [R. 81, at 5]. However, while the outcome in this case owes a great deal to the Supreme Court's decision in *Packingham,* as Plaintiff correctly asserts, "[T]his litigation was neither boilerplate nor a sure thing," and "*Packingham* [was] decided two and a half years *after* this action was initiated." [R. 81, at 5]. Prior to the Supreme Court's June 19, 2017 decision in *Packingham,* between May 23, 2014 and February 20, 2017, Plaintiff's counsel worked 136.3 hours. [R. 81-1, at 9-19]. After the *Packingham* decision, from June 19, 2017 to November 20, 2017, Plaintiff's counsel worked 13.2 hours. *Id.* at 19-20. In total, Plaintiff's counsel worked 149.5 hours, which is .1 less than the 149.6 total hours provided by Plaintiff. *Id.* at 9-20. It is clear that the majority of the time Plaintiff's counsel worked on this case, Plaintiff's counsel had no way to know what the outcome of this case would be. The vast majority of Plaintiff's counsel's work on this case was done prior to *Packingham*, and the work that followed *Packingham* was necessary to finish the case.

Additionally, regarding Defendant Tilley's assertion that the *Packingham* decision rendered many of Plaintiff's supplemental briefs unnecessary and irrelevant to the outcome of the case [R. 84, at 2-3], Defendants have failed to show either a requirement that a prevailing party only be compensated for the work that directly resulted in the prevailing outcome or why a favorable decision from a higher court should reduce Plaintiff's fee award. Indeed, many cases are won thanks to a favorable decision from a higher court. The fact the favorable decision occurred during the instant action, as it did in the present case, has no bearing on the reasonableness of the prevailing party's counsel's hourly rate. Therefore, the undersigned will not recommend Plaintiff's counsel's hourly rate be reduced merely because the Supreme Court's decision in another case led to a favorable outcome in the present case.

Considering the record, awards in analogous cases, and the Court's own knowledge and experience in handling similar fee requests, the undersigned recommends Plaintiff's hourly rate be found to be reasonable and proper for an attorney in this geographic area possessing similar skills and experience. Therefore, the undersigned will recommend Plaintiff's counsel's hourly rate be $300.00.

## 2. REASONABLE HOURS

"In calculating a fee applicant's lodestar, a district court should exclude hours that were not 'reasonably expended' by counsel." *Ohio Right to Life Soc'y, Inc.*, 590 F. App'x. at 602 (quoting *Hensley*, 461 U.S. at 434). The prevailing party bears the burden of adequately documenting "and submit[ing] evidence supporting the hours worked." *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* "[D]ocumentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 533 (6th Cir. 2008). "There is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Id.* at 436–37.

"'Purely clerical or secretarial' tasks are not compensable." *Davis,* 267 F. Supp. 3d at 996 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). "Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Davis,* 267 F. Supp. 3d at 996 (citing *Lay v. Astrue*, No. 5:10-cv-346-DLB, 2012 WL 5988822, at * 5 (E.D. Ky. Nov. 29, 2012) (citing *B & G Mining, Inc. v. Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) ("While reviewing

9

correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work.")))). Additionally, "'Block billing involves identifying more than one task in a single billing entry.'" *Davis,* 267 F. Supp. 3d at 997 (quoting *Gibson v. Scott*, No. 2:12-cv-1128-GCS, 2014 WL 661716, at \*4 (S.D. Ohio Feb. 19, 2014)). "'Block billing is not *per se* improper; it 'can be sufficient' if the description of the work performed is adequate.'" *Davis,* 267 F. Supp. 3d at 997 (quoting *Husted*, 831 F.3d at 705 n.7). However, the use of block billing in entries that contain clerical work render it impossible for the Court to determine the exact amount of non-compensable time included in the requested hours. *Davis,* 267 F. Supp. 3d at 997.

In the present case, since Plaintiff's counsel worked 149.5 hours, as shown previously herein, rather than the 149.6 total hours provided by Plaintiff, the undersigned will recommend Plaintiff's counsel's hours worked be reduced to 149.5 hours. [R. 81-1, at 9-20]. Additionally, many of the fees requested by Plaintiff are not compensable because they include billing for clerical tasks. Also, many of Plaintiff's counsel's billing entries that involve clerical tasks can be characterized as "block billing." Examples of entries that include either wholly clerical tasks or block billing that was not adequately described enough to determine the percentage of the included non-clerical and clerical tasks include Plaintiff's counsel filing the present action and providing copies to Plaintiff [R. 81-1, at 12 (Feb. 9, 2015 Entry)], reviewing summons [R. 81-1, at 12 (Feb. 10, 2015 Entry)], filing a motion to seal with an affidavit [R. 81-1, at 12 (Feb. 11, 2015 Entry)], circulating a report to counsel [R. 81-1, at 13 (Apr. 9, 2015 Entry)], filing a report of a meeting [R. 81-1, at 13 (Apr. 13, 2015 Entry)], directing a paralegal to tickle deadlines [R. 81-1, at 13 (Apr. 14, 2015 Entry), 14 (June 26, 2015 Entry), 15 (Sept. 17, 2015 Entry), 16 (Nov. 13, 2015 Entry), 17 (Aug. 25, 2016 Entry), 19 (July 6, 2017 Entry)], filing a motion and memo [R. 81-1, at 13 (May 11, 2015 Entry)], filing a supplementary memo and exhibits [R. 81-1, at 15 (Aug. 28, 2015 Entry)],

filing replies to memos [R. 81-1, at 16 (Oct. 16, 2015 Entry)], filing a notice of supplemental

authority on *Packingham* [R. 81-1, at 17 (Dec. 4, 2015 Entry)], filing supplemental authority on

*Solloway* and the 2016 Kentucky Legislative Session [R. 81-1, at 17 (Aug. 2, 2016 Entry)], filing

a memo on *Snyder* [R. 81-1, at 18 (Sept. 30, 2016 Entry)], filing a notice of supplemental authority

regarding *Minnis* [R. 81-1, at 18 (Oct. 24, 2016 Entry)], filing a memo regarding *Packingham* [R.

81-1, at 19 (July 27, 2017 Entry)], filing a notice of supplementary authority regarding a Colorado

case [R. 81-1, at 19 (Sept. 1, 2017 Entry)], filing a notice of supplementary authority regarding the

2016 Legislative Session [R. 81-1, at 19 (Sept. 5, 2017 Entry)], and filing no objection to a motion

to amend and correct [R. 81-1, at 20 (Nov. 20, 2017)]. Considering the aforementioned fee entries

that included non-compensable clerical tasks, the Court will exclude those hours before calculating

the lodestar amount. After reducing the 149.5 hours Plaintiff's counsel worked by the 14.7 hours

that included non-compensable clerical tasks, the lodestar amount is 134.8 hours multiplied by

$300.00 which equals $40,440.00.

### D. ATTORNEY'S FEES ADJUSTMENT

"The product of reasonable hours times a reasonable rate does not end the inquiry."

*Hensley*, 461 U.S. at 434. "After determining the lodestar amount, the court can adjust the fee

upward or downward 'to reflect relevant considerations peculiar to the subject litigation.'" *Davis,*

267 F. Supp. 3d at 998 (quoting *Adcock–Ladd*, 227 F.3d at 349). "However, 'a 'strong

presumption' favors the prevailing lawyer's entitlement to his lodestar fee.'" *Davis,* 267 F. Supp.

3d at 998 (quoting *Adcock–Ladd*, 227 F.3d at 350). Additionally, "the extent of a plaintiff's success

is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C.

§ 1988." *Hensley*, 461 U.S. at 440. However, "'[w]here a plaintiff has obtained excellent results,

his attorney should recover a fully compensatory fee,' which will typically 'encompass all hours

reasonably expended on the litigation.'" *Davis,* 267 F. Supp. 3d at 999 (quoting *Hensley,* 461 U.S. at 435). Therefore, "modifications to the lodestar are proper only in certain 'rare' and 'exceptional' circumstances, supported by both 'specific evidence' on the record and detailed findings." *Adcock–Ladd*, 227 F.3d at 350 (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986)).

In the present case, Plaintiff has obtained nothing less than excellent results. Specifically, Plaintiff was granted a permanent injunction and KRS §§ 17.546 and 17.510(10), (13) were found to be unconstitutional. [R. 57]. Despite Plaintiff's excellent results, as previously mentioned, Defendants Corn and Roberts request the Court consider "the very recent changes in the landscape of anonymous communication and the breadth to which it affects minors when evaluating the costs and fees requested by Plaintiff and reduce the award accordingly." [R. 86, at 2]. Defendants' suggestion for a reduction is unaccompanied by any legal support, so the undersigned will recommend it be rejected. Additionally, there are no "rare" or "exceptional" circumstances that support a reduction of the lodestar amount, so Plaintiff is entitled to a fully compensatory attorney's fee. *Davis,* 267 F. Supp. 3d at 999 (citing *Adcock–Ladd*, 227 F.3d at 350). Therefore, the undersigned will recommend the lodestar amount of $40,440.00 not be reduced.

### E. COSTS

"As part of an attorneys' fee award, § 1988 allows district courts to award 'those incidental and necessary expenses incurred in furnishing effective and competent representation.'" *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x. 597, 605 (6th Cir. 2014) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013)). "It is the responsibility of the prevailing party to document and provide evidence regarding the reasonableness of the costs and expenses for which it is seeking an award." *Id.* Here, Plaintiff's request for costs and expenses

12

includes only the $400.00 filing fee [R. 81, at 1], and Defendant Tilley does not challenge the requested costs [R. 84, at 3]. If Defendants Corn and Roberts aforementioned request for a reduction [R. 86, at 2] is construed as a challenge to the costs Plaintiff requests, the undersigned recommends Defendants' challenge be denied because Defendants provide no support for their proposed reduction. Therefore, the undersigned will recommend Plaintiff's Motion for Attorney's Fees and Costs [R. 81] be granted in full regarding costs in the amount of $400.00.

## RECOMMENDATION

IT IS RECOMMENDED that Defendants be DIRECTED to pay Plaintiff's attorney's fees in the amount of $40,440.00 and costs in the amount of $400.00.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.,* 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 15th day of March, 2018.



Signed By:
Edward B. Atkins
United States Magistrate Judge